**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THOMAS ROY W., JR.,**

**8:19-cv-972**

                   **Plaintiff,**                **(GLS)**

        **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                   **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:**<br>Conboy, McKay Law Firm<br>307 State Street<br>Carthage, NY 13619 | LAWRENCE D. HASSELER,<br>ESQ. |
| **FOR THE DEFENDANT:**<br>HON. GRANT C. JACQUITH<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | MICHAEL L. HENRY<br>Special Assistant U.S. Attorney |
| Ellen E. Sovern<br>Regional Chief Counsel<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Thomas Roy W., Jr. challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g).  (Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Thomas Roy's arguments, the Commissioner's decision is affirmed.

### II. Background

On January 28, 2016, Thomas Roy filed an application for DIB under the Social Security Act ("the Act"), alleging a disability beginning May 1, 2015.  (Tr.[1] at 70, 162-65.)  After his application was denied, (*id.* at 81-86), Thomas Roy requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 90-91), which was held on May 23, 2018, (*id.* at 32-69).  On August 14, 2018, the ALJ issued an unfavorable decision, finding Thomas Roy not disabled and denying the requested relief, (*id.* at 13-31), which became the Commissioner's final determination upon the Appeals Council's denial of review, (*id.* at 1-6).

Thomas Roy commenced this action by filing his complaint on August

---

[1] Page references preceded by "Tr." are to the administrative transcript.  (Dkt. No. 6.)

7, 2019, wherein he sought review of the Commissioner's determination. (Compl.)  Thereafter, the Commissioner filed a certified copy of the administrative transcript.  (Dkt. No. 6.)  Each party filed a brief seeking judgment on the pleadings.  (Dkt. Nos. 9, 10.)

## III.  <u>Contentions</u>

Thomas Roy contends that: (1) the ALJ failed to find that fibromyalgia was not a medically determinable impairment; (2) the ALJ failed to properly follow the treating physician rule; (3) the ALJ improperly evaluated Thomas Roy's credibility; and (4) the ALJ's residual functional capacity (RFC) finding is not supported by substantial evidence.  (Dkt. No. 9 at 12-25.) The Commissioner counters that the ALJ's findings are free from legal error and are supported by substantial evidence.[2]  (Dkt. No. 10 at 11-25.)

## IV.  <u>Facts</u>

The court adopts the parties' factual recitations to the extent they are consistent with the statement of facts contained in the ALJ's decision and supported by the medical record.  (Tr. at 18-26; Dkt. No. 9 at 1-11; Dkt. No. 10 at 2-10.)

---

[2] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) (internal quotation marks and citation omitted).

## V.  <u>Standard of Review</u>

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g) is well established and will not be repeated here.  For a

full discussion of the standard and the five-step process by which the

Commissioner evaluates whether a claimant is disabled under the Act, the

court refers the parties to its previous decision in *Christiana v. Comm'r of*

*Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-3 (N.D.N.Y.

Mar. 19, 2008).

## IV.  <u>Discussion</u>

### A.    <u>Fibromyalgia</u>

First, Thomas Roy contends that the ALJ failed to find that

fibromyalgia was not a medically determinable impairment, and improperly

"substituted his own judgments for those of an expert."  (Dkt. No. 9

at 13-17.)  The Commissioner counters, and the court agrees, that the

ALJ's finding that Thomas Roy's fibromyalgia was not medically

determinable was free from legal error and supported by substantial

evidence.  (Dkt. No. 10 at 12-19.)

To be medically determinable, physical impairments "must be

established by objective medical evidence from an acceptable medical

source."  20 C.F.R. § 404.1521.  The Social Security Ruling 12-2p contains specific criteria for deciding whether a diagnosis of fibromyalgia is medically determinable.  *See* SSR 12-2p, Titles II AND XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *2 (SSA July 25, 2012).  Under this criteria, a claimant will be found to have a medically determinable impairment if a physician diagnoses him with fibromyalgia and provides evidence justifying the diagnosis under either the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia, or the 2010 ACR Preliminary Diagnostic Criteria.  *See id.*

Under the 1990 ACR Criteria, the claimant must show: (1) "[a] history of widespread pain . . . that has persisted . . . for at least [three] months"; (2) that there are "[a]t least [eleven] positive tender points on physical examination"; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded."  *Id.* at *2-3; *Donna M. W. v. Comm'r of Soc. Sec.*, No. 6:18-CV-0364, 2019 WL 2603894, at *8 (N.D.N.Y. June 25, 2019).  Under the 2010 ACR Criteria, the claimant must show: (1) a "history of widespread pain"; (2) "[r]epeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions"; and (3) "evidence that other disorders that could cause these repeated

5

manifestations were excluded." *Id.*

Here, Dr. Jonathan Krant diagnosed Thomas Roy with fibromyalgia. (Tr. 368).  In addressing this diagnosis, the ALJ found that it was not medically determinable, stating that "the available medical evidence d[id] not demonstrate clinical examination and findings which support diagnosis of fibromyalgia consistent with SSR 12-2p." (*Id.* at 19-20.)  This was not error, because Dr. Krant failed to document a "history of widespread pain," and there is no evidence that Thomas Roy demonstrated the existence of eleven tender points on his body, or six or more fibromyalgia symptoms, and thus, neither the 1990 or 2010 ACR Criteria have been met.  *See* SSR 12-2p, 2012 WL 3104869, at *2-3.

For example, after first meeting with Thomas Roy in March 2017, Dr. Krant assessed that "[t]here may be a component of fibromyalgia, with paired tender spots in the chest wall, sleep disturbance and impaired cognition," (Tr. 365-66), and, a few weeks later, marked fibromyalgia as the "primary" diagnosis after Thomas Roy complained of "persistent tender spots, fatigue and arthralgias affecting the hands, wrists and paracervical region," (*id.* at 367-68).  About one month later, in April 2017, Dr. Krant marked fibromyalgia as the "secondary" diagnosis, noting that Thomas Roy

6

had diffuse arthraigias, tender spots, cognitive and sleep disturbance.  (*Id.* at 369.)  Then, in July 2017, Dr. Krant, while describing fibromyalgia as a "secondary" diagnosis, noted that Thomas Roy had "[n]o palpable tender spots," "no muscle tenderness," and "normal range of motion [in] all joints." (*Id.* at 371-72.)  In November 2017, there was no mention of fibromyaglia in Dr. Krant's assessment, (*id.* at 374), but, in March 2018, Dr. Krant again listed fibromyalgia as a "secondary" diagnosis, while also noting "no muscle tenderness," and "normal range of motion [in] all joints," (*id.* at 376).

Aside from observances that Thomas Roy had "paired tender spots in the chest wall," (*id.* at 366-67, 369), and "tender spots involving the chest wall and back," (*id.* at 369), there is no other evidence that Thomas Roy demonstrated the existence of eleven tender points on his body, *see* SSR 12-2p, 2012 WL 3104869, at *2-3 (describing the eighteen tender point sites to include the skull, neck, shoulder muscles, elbows, glutes, hips, and knees, and noting that "[a]t least [eleven] positive tender points on physical examination . . . must be found bilaterally . . . and both above and below the waist").  Nor is there any evidence, aside from Dr. Krant's observations that Thomas Roy had "daily fatigue, sleep disturbance and cognitive impairment," (Tr. 365-70), that Thomas Roy demonstrated the

existence of six or more fibromyalgia symptoms, *see* SSR 12-2p, 2012 WL 3104869, at *3 (listing examples of common conditions, including "manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome").

Further, Dr. Krant's notes do not explain why, for example, osteoarthritis and carpal tunnel syndrome could not explain Thomas Roy's symptoms, and, although Dr. Krant assessed that Thomas Roy is a "committed smoker" and "encouraged [him] to discontinue this habit altogether," (Tr. 376), as noted by the ALJ, Thomas Roy "did not stop smoking to trial whether his symptoms would improve with tobacco cessation," (*id.* at 19-20).  *See Donna M. W.*, 2019 WL 2603894, at *8 ("[T]here is no indication that treatment providers ruled out other possible diagnoses or causes of [the claimant's] reported symptoms." (citation omitted)).

Finally, to the extent Thomas Roy argues that the ALJ "discredited" and "substituted his own judgments" for those of Dr. Krant, "a Rheumatologist and expert on the issues of arthritis and fibromyalgia," (Dkt. No. 9 at 15-17), a "mere diagnosis of fibromyalgia without a finding as

8

to the severity of symptoms and limitations does not mandate a finding of disability," *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (citation omitted), and the Commissioner "cannot rely upon the physician's diagnosis alone," SSR 12-2P, 2012 WL 3017612, at *2. Accordingly, the ALJ's determination was free from legal error and supported by substantial evidence.

**B.   RFC Determination**

Thomas Roy argues that substantial evidence does not support the ALJ's determination that he has the RFC to "work at a light exertional level." (Dkt. No. 9 at 23-25.)  The Commissioner counters, and the court agrees, that this assertion is without merit.  (Dkt. No. 10 at 25.)

A claimant's RFC "is the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

*1.    The Treating Physician Rule*

Thomas Roy contends that the ALJ erred in applying the treating

physician rule because he failed to give controlling weight to Dr. Emily

Wood's opinion, "despite the fact that she treated [him] for a year, [and]

coordinat[ed] treatment with [Thomas Roy's] pain management physician."

(Dkt. No. 9 at 18-21.)  The Commissioner disagrees and submits that the

ALJ properly evaluated the medical opinion evidence.  (Dkt. No. 10

at 21-24.)

Medical opinions, regardless of the source, are evaluated by

considering several factors outlined in 20 C.F.R. § 404.1527(c).  Controlling

weight will be given to a treating physician's opinion that is "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence."  *Id.*

§ 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Unless controlling weight is given to a treating source's opinion, the ALJ is

required to consider the following factors in determining the weight

assigned to a medical opinion: whether or not the source examined the

claimant; the existence, length and nature of a treatment relationship; the

frequency of examination; evidentiary support offered; consistency with the

record as a whole; and specialization of the examiner.  *See* 20 C.F.R. § 404.1527(c).  The ALJ must provide "'good reasons' for the weight given to the treating source's opinion."  *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted).  "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  *Id.* at 407 (citations omitted).

Here, the ALJ had before him the opinions of Dr. Elke Lorensen and Dr. Wood in making his determination.  (Tr. 24.)  Dr. Lorensen opined that Thomas Roy has "no gross limitations" with regard to handling small objects with his hands, standing, walking, and sitting, (*id.* at 260), and has "moderate limitations" with regard to pushing and pulling with his hands and arms, (*id.*), which, the ALJ noted, "harmonizes with the balance of the available record as consistent with the ability to engage in light exertion work more generally," with certain limitations, (*id.* at 24).  Dr. Lorensen also assessed Thomas Roy's visual impairment, which, the ALJ noted, "is objectively demonstrated, including the confirmed presence of the BB [gun

incident] reported by [Thomas Roy]."  (*Id.*)  As such, because Dr.

Lorensen's findings are consistent with "the findings, assessments, and

impressions documented during treatment longitudinally," "considerable

weight" was given to her opinion.  (*Id.*)

    In contrast, the ALJ gave "little weight" to Dr. Wood's May 14, 2018

opinion, because it is "not supported by the longitudinal record," including

Dr. Wood's own examination findings.  (*Id.*)  In May 2018, Dr. Wood

opined, in a checkbox questionnaire, that Thomas Roy was limited to

"never" balancing, stooping, kneeling, crouching and crawling, and limited

to only occasional use of the bilateral feet.  (*Id.* at 378-84.)  However, in her

initial report, dated May 7, 2017, she opined that only temporary

restrictions were warranted.  (*Id.* at 456.)  Notably, she assessed that

Thomas Roy had a "normal gait when [he] believes he is unobserved," and

that Thomas Roy was "disappointed" with her findings because she

"believe[d] he [wa]s looking for permanent disability."  (*Id.*)  Her postural

restrictions were also inconsistent with Thomas Roy's daily activities,

including, for example, his ability to be generally independent in performing

self-care, with some assistance from his girlfriend as to buttoning or

zipping; he is able to take his medications; he and his girlfriend share in the

care of children, pets, meal preparation, and household chores; and he is able to manage his finances, use a cell phone and computer, and watch television.  (*Id.* at 54-55, 187-96.)  Thus, "the record does not demonstrate muscle atrophy consistent with the level of debility alleged by [Thomas Roy] and opined by Dr. Wood," and her opinion is inconsistent with the record, and, therefore, "little weight" was afforded to Dr. Wood's May 14, 2018 opinion.[3]  (Tr. 24.)  As such, the ALJ did not commit legal error.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion, however, that opinion will not be deemed controlling.  And the less consistent that opinion is with the record as a whole, the less weight it will be given.").

2.  *The ALJ's Consideration of Thomas Roy's Subjective Complaints*

---

[3] To the extent Thomas Roy challenges the ALJ's observation that Dr. Wood did not address what effect, if any, Thomas Roy's poor treatment compliance and marijuana use had on his functioning because "[t]here is no medical opinion in the record to support" such "critici[sm]," (Dkt. No. 9 at 20), this argument fails.  Thomas Roy failed to pursue other treatment options, including "smoking cessation," suggested by Dr. Wood, (Tr. 452-53); Dr. Wood and Dr. Sheryl Movsas, acknowledging Thomas Roy's marijuana use, prescribed non-narcotic medications, (Tr. 325, 332, 339-40, 453); and, as noted above, Dr. Krant assessed that Thomas Roy is a "committed smoker," and "encouraged [him] to discontinue this habit altogether."  (Tr. 376.)  As such, the ALJ's determination was free from legal error and supported by substantial evidence.

Next, Thomas Roy argues that the ALJ failed to fully credit his

testimony, and should have given him more credit for his "long and varied

course of employment in jobs that are at the very heavy exertional level."

(Dkt. No. 9 at 21-22.)  The Commissioner counters, and the court agrees,

that this assertion is without merit.  (Dkt. No. 10 at 24-25.)

Once the ALJ determines that the claimant suffers from a "medically

determinable impairment[ ] that could reasonably be expected to produce

the [symptoms] alleged," he "must evaluate the intensity and persistence of

those symptoms considering all of the available evidence; and, to the

extent that the claimant's [subjective] contentions are not substantiated by

the objective medical evidence, the ALJ must engage in a credibility

inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal

quotation marks and citations omitted).  In performing this analysis, the ALJ

"must consider the entire case record and give specific reasons for the

weight given to the [claimant's] statements."  SSR 96-7p, 1996 WL 374186,

at *4 (July 2, 1996).

Specifically, in addition to the objective medical evidence, the ALJ

must consider the following factors: "1) daily activities; 2) location, duration,

frequency and intensity of any symptoms; 3) precipitating and aggravating

factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi) (other citation omitted)).

Here, Thomas Roy testified that he is tired, fatigued, and drowsy during the day; he needs to sleep during the day because he does not sleep well at night; he does not lift over twenty pounds; because of pain in his hips, he does not sit or stand for more than twenty to thirty minutes at a time, and he can walk for about fifteen to twenty minutes; he is able to wash dishes, sweep, or rake for "maybe five minutes"; he can go to the grocery store "so long as he can lean on the cart"; and computers present a problem for him because he has difficulty operating a keyboard with his fingers.  (Tr. 52-55.)

The ALJ expressly took these subjective complaints into account and found that Thomas Roy's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Thomas Roy's subjective statements "concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with the

15

medical evidence and other evidence in the record." (*Id.* at 22.)

Specifically, the ALJ considered the objective medical evidence since the

alleged onset date, as well as the opinions from Dr. Lorensen and Dr.

Wood, all of which contain substantial evidence supporting the ALJ's

finding that Thomas Roy is able to perform light work, with the following

limitations: Thomas Roy "can occasionally push or pull with the bilateral

upper extremities"; he "can occasionally reach overhead with the bilateral

upper extremities"; he "can occasionally handle bilaterally"; and he is

"limited to mono vision." (*Id.* at 20-25.)  And, contrary to Thomas Roy's

contention that the ALJ did not take into account his work history, (Dkt.

No. 9 at 22), such argument is belied by the ALJ's explicit discussion of

Thomas Roy's work history and finding that he is "unable to meet the

demands of his past relevant work," (Tr. 25).

   Ultimately, the ALJ explicitly acknowledged consideration of 20

C.F.R. § 404.1529 when making his credibility determination, (*id.* at 20),

and it is evident from his thorough discussion that the determination was

supported by substantial evidence and free from legal error.  *See Britt v.*

*Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20

C.F.R. § 404.1529 and the applicable Social Security Rulings as evidence

that the ALJ used the proper legal standard in assessing the claimant's credibility); *see also Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." (internal quotation marks, alteration, and citation omitted)); *Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding" (citation omitted)).

Accordingly, the ALJ did not err in evaluating Thomas Roy's subjective complaints.

## C.   Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision, as it is supported by substantial evidence.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

17

**ORDERED** that the Commissioner's decision is **AFFIRMED** and

Thomas Roy's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

July 30, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge